476 So.2d 883 (1985)
Julia J. STEVENS, Appellee,
v.
Leo Gerald STEVENS, Appellant.
No. 17190-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
Writ Denied November 22, 1985.
*884 Bowers & Bowers by Gary A. Bowers, Shreveport, for appellee.
*885 Tucker, Jeter & Jackson by James C. McMichael, Jr., Shreveport, for appellant.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
NORRIS, Judge.
This appeal arises from an action by a former wife to enforce a community property settlement agreement. The trial court upheld the agreement and the husband appeals. We affirm.
The relevant facts of this case are as follows. Mr. and Mrs. Stevens sought and obtained a judgment of separation on May 8, 1980. On that same day, they voluntarily entered into a community property settlement agreement whereby Mrs. Stevens received 45% of her husband's military retirement pay. This agreement, however, was incorporated into neither the judgment of separation nor the subsequent judgment of divorce dated January 22, 1981.
Then, on December 10, 1980, the parties entered into a second agreement, labeled a "cash sale deed." This cash sale deed purported to reconvey the retirement benefits back to Mr. Stevens in the event Mrs. Stevens remarried. Mrs. Stevens remarried on May 5, 1983.
Mr. Stevens paid his wife her share of the retirement benefits from April 1, 1980 to July 31, 1981 in accordance with the settlement agreement. Then, in August of 1981 he ceased payments, allegedly because of the ruling of the United States Supreme Court in McCarty v. McCarty, 453 U.S. 210,101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which held that a wife has no property interest in her husband's military retirement pay.
As a result, Mrs. Stevens brought suit in Bossier Parish to enforce the community property settlement agreement. Mr. Stevens, who was now a Texas domiciliary, excepted to the trial court's exercise of personal jurisdiction. The trial court overruled this exception. Mr. Stevens then answered and reconvened to recover all amounts he had previously paid Mrs. Stevens under the agreement. The trial court held that the community partition agreement was enforceable, that the cash sale deed was not and that Mr. Stevens was not entitled to recover on his reconventional demand.
On appeal, Mr. Stevens raises the following issues. First, whether the trial court erred in overruling his exception of personal jurisdiction. Second, whether the McCarty decision should be retroactively applied to rescind a settlement agreement that was not incorporated into a judgment. Third, whether the trial court erred in finding the cash sale deed was invalid for lack of consideration; and, finally, whether the trial court erred in denying him relief on his reconventional demand.

ISSUE # 1JURISDICTION
In his first assignment of error Mr. Stevens contends that the trial court erred in overruling his declinatory exception of personal jurisdiction. Mr. Stevens had been served in person by certified mail pursuant to the Louisiana Long-Arm Statute, LSA-R.S. 13:3201 and service was also made upon his attorney of record in the previous separation and divorce proceedings. The trial court ruled that service of process under the Louisiana Long-Arm Statute was sufficient to confer jurisdiction.
On appeal, Mr. Stevens contends that the execution of a community property agreement is not the type of activity or conduct that confers personal jurisdiction under the Louisiana Long-Arm Statute.
Further, Mr. Stevens argues that the present case amounts to an action to enforce a provision for the payment of money contained in a community property settlement contract. As such, he contends it is not incidental to the original action for divorce and therefore service on his former counsel of record is improper and insufficient. In support of this contention he cites Smith v. Smith, 289 So.2d 271 (La. App. 1st Cir.1973). In Smith, a former wife sued to obtain a money judgment for alleged arrearages in alimony and child support payments, and to have the judgment *886 made executory. This action also arose from an earlier divorce proceeding. The first circuit held that the wife's action was not incidental to the earlier divorce proceeding and therefore service on the husband's attorney in the divorce proceeding was insufficient to confer jurisdiction.
Mrs. Stevens, on the other hand, cites the recent Louisiana Supreme Court decision of Gowins v. Gowins, 466 So.2d 32 (La.1985), as dispositive of the jurisdiction issue. In Gowins, the Louisiana Supreme Court found that once a trial court obtains jurisdiction in a divorce or separation proceeding it retains jurisdiction over any incidental matters connected with the original proceeding. Gowins, supra at 35. Further, the court found that a proceeding to partition the community property arises out of and is an essential concomitant of the original proceeding. Gowins, supra at 37. Therefore, if a court obtains personal jurisdiction over a party in a divorce or separation proceeding, that jurisdiction continues for any ancillary proceeding to distribute the community property, since the latter action is within the scope of the jurisdiction originally conferred. Id.
After a careful reading of both Gowins and Smith, and the cases cited therein, we find the instant action to enforce a community property settlement agreement more closely related to the action to distribute community property in Gowins, than the action to obtain a money judgment for alimony and child support arrearages in Smith. In the instant action, as in Gowins, the object is the same, division or distribution of community property. In Smith, the object of the action had little or nothing to do with a division or distribution of community property. As noted, the purpose of that suit was to obtain a money judgment for past due alimony and child support and to have that judgment made executory. Satisfaction of the money judgment may or may not have been made from community assets. In the instant action, as in Gowins, satisfaction of any judgment would necessarily have to be made out of community property. Accordingly, we find Gowins controlling and reject the rule set forth in Smith as inapplicable.
Under the rule set forth in Gowins, the trial court, of course, must have personal jurisdiction in the original proceeding before any continuing jurisdiction can be exercised. In the original proceedings of the instant case, jurisdiction was properly obtained over Mr. Stevens in the separation suit as he was a Louisiana domiciliary at the time, waived service of process and filed an answer and reconventional demand. Later, he again evoked the trial court's jurisdiction by filing his suit for divorce.
Therefore, under Gowins, the trial court properly obtained jurisdiction in the original proceeding and that jurisdiction continued into the instant action to enforce the community property settlement agreement. As for notice of the present action, service on Mr. Stevens' attorney of record was sufficient.
Moreover, as found by the trial court, even without the doctrine of continued jurisdiction, we believe that service of process under the Louisiana Long-Arm Statute was sufficient to confer jurisdiction. It is well established that the provisions of the Louisiana Long-Arm Statute are to be broadly construed to the full extent permitted under due process. Adcock v. Surety Research and Inv. Corp., 344 So.2d 969 (La.1977); and Latham v. Ryan, 373 So.2d 242 (La.App. 3d Cir.1979).
Admittedly, we have discovered no Louisiana cases which expressly hold that a domestic agreement falls within the definition of "transacting business," as that phrase is used in LSA-R.S. 13:3201(1). However, there are numerous Louisiana decisions that have found that the phrase "transacting business" includes many "non-traditional" business type activities. See, Louisiana Board of Trustees v. Bruno, 426 So.2d 727 (La.App. 3d Cir.1983); Heinberg v. Poole, 413 So.2d 271 (La.App. 3d Cir.1982); and Jackson v. Bishop College, 359 So.2d 704 (La.App. 1st Cir.1978).
*887 Further, courts have held that the applicability of the Louisiana Long-Arm Statute is an issue of fact, the determination of which must rest upon the peculiar circumstances of each case. Gelb v. Gelb, 343 So.2d 1084 (La.App. 4th Cir.1977); Aucoin v. Hanson, 207 So.2d 834 (La.App.3d Cir. 1968), and the cases cited therein.
Considering the foregoing, the trial court was not manifestly erroneous in finding jurisdiction was conferred by the longarm statute. The settlement agreement in this case was negotiated, executed and signed in Louisiana, and was therefore in all respects a Louisiana contract. Under the broad interpretation to be given the Louisiana Long-Arm Statute, such activity properly falls within the transacting of any business in this state provision. LSA-R.S. 13:3201(1).
Finally, irrespective of any other basis of jurisdiction, the appellant waived any objection to personal jurisdiction by filing a reconventional demand in the instant action. This is true even though he attempted to preserve his right to object by filing a declinatory exception. Express reservation of rights under an exception to jurisdiction does not avoid waiver which would otherwise result from filing a reconventional demand. LSA-C.C.P. art. 7; Mexic Bros. v. Sauviac, 191 So.2d 873 (La.App. 4th Cir.1966).
This assignment lacks merit.
ISSUE # 2RETROACTIVITY OF THE McCARTY DECISION
In his second and third assignments of error, Mr. Stevens contends that the trial court erred in enforcing the community property settlement agreement. In assignment two he argues that the McCarty decision should be retroactively applied to rescind the settlement agreement as an error of law. In assignment three, he argues, and the appellee agrees, that if McCarty is applied retroactively, then the settlement agreement is also lesionary. Mr. Stevens notes the cases which reject a retroactive application of McCarty,[1] but attempts to distinguish them on the ground that the settlement agreements in those cases had been incorporated into a judgment. Consequently, he argues that res judicata barred a retroactive application of McCarty in those cases. Counsel for Mr. Stevens aptly points out that the settlement agreement in the instant case was not incorporated into a judgment. Therefore, appellant claims, there is no res judicata basis for denying a retroactive application of McCarty in the instant case.
When the parties entered into the agreement, military retirement benefits were clearly treated as community property in this state. Swope v. Mitchell, 324 So.2d 461 (La.App. 3d Cir.1975); Moon v. Moon, 345 So.2d 168 (La.App. 3d Cir.1977). Then, in 1981, the U.S. Supreme Court held that states must treat military retirement benefits as separate property. McCarty, supra. Subsequently, in 1982 Congress overruled McCarty by enacting the Uniformed Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1408(c)(1), hereinafter referred to as the "Act." The effect of this act was to allow state courts to classify military retirement benefits according to their own jurisprudence. Gowins v. Gowins, supra; and Rohring v. Rohring, 441 So.2d 485 (La.App. 2d Cir.1983).
The Act expressly provides in subsection (c)(1) that it is to be retroactively applied to June 25, 1981, the day before the McCarty decision. The effect of this provision is to nullify the McCarty decision. Menard v. Menard, 460 So.2d 751 (La.App. 3d Cir. 1984).
Thus, it can be seen:
(1) that military retirement benefits were community assets at the time the parties entered into the settlement agreement in May of 1980;

*888 (2) that military retirement benefits are community property at the present time; and
(3) that Congress intends that military retirement benefits are to be retroactively treated as community property back to the day before the McCarty decision.
Appellant argues for retroactive application of a decision that has been legislatively overruled. To apply McCarty retroactively would certainly create an illogical result and subvert the obvious intent of Congress to completely obliterate the novel results of the McCarty rule. Cf. Menard v. Menard, supra. See also Smith v. Smith, 458 A.2d 711 (Del.Fam.Ct., 1983); In Re Marriage of Hopkins, 142 Cal. App.3d 350, 191 Cal.Rptr. 70 (1983). McCarty should be laid to rest once and for all.
Our brethren on the third circuit facing the problem in the context of an agreement that fell between the McCarty decision and passage of the Act have implicitly concluded that McCarty had no retroactive application and that any prospective application of McCarty whatsoever would carve out a category of people whose cases happened to fall between the date McCarty was decided and the date the Act overruling it became effective. This 20 month gap in the law, the court concluded, would unfairly deprive litigants of substantial property rights on the basis of an accident of timing. Menard, supra at 754. In the instant case, to permit McCarty to apply retroactively would dictate a similar unfair result, albeit in the opposite direction, and we refuse to create such an inequity.
But even more importantly, to permit McCarty to apply retroactively would violate the clear intent of Congress in passing the act. The intent of Congress in passing the act was to completely obliterate and erase the effect of the McCarty decision. Menard, supra at 754.
We reiterate our implied holding in Tarver that McCarty is not to be applied retroactively to any community property settlement agreement, be it incorporated into a judgment or not. We therefore pretermit any discussion about the lesion argument.

ISSUE # 3VALIDITY OF THE CASH SALE DEED
In his fourth assignment of error, Mr. Stevens argues that the trial court erred in finding the cash sale deed invalid for lack of consideration. He argues that the proper analysis under Louisiana law is one of cause, not consideration. We conclude that the trial court's inherent findings support a ruling of invalidity for the following reasons.
The instrument at issue is a document labeled a "Cash Sale Deed." However, the precise nature of this document is unclear. It appears to be in authentic form. Further, it purports to convey all Mrs. Stevens' interest in the military retirement benefits back to her husband, subject to the suspensive condition that she remarry someone other than Mr. Stevens.
In order to aid in his interpretation of the document the trial judge looked to and relied upon the parties' testimony.[2]
The trial court found the document could not qualify as a sale. A sale is a special form of contract expressly defined by law. Stratton-Baldwin Co., Inc. v. Brown, 343 So.2d 292 (La.App. 1st Cir.1977). LSA-C.C. art. 2439 defines a sale as:
[A]n agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. [Emphasis added.]
LSA-C.C. art. 2464 sets forth the essential elements of price as follows:
The price of the sale must be certain, that is to say, fixed and determined by the parties.

*889 It ought to consist of a sum of money, otherwise it would be considered as an exchange.
It ought to be serious, that is to say there should have been a serious and true agreement that it should be paid.
It should not be out of all proportion with the value of the thing ... [Emphasis added.]
In the instant case, the instrument does not provide for the payment of any sum of money. On the contrary, it states that "this sale is made for the consideration of the sum of ($ ZERO ) dollars." Further, the depositions of the parties clearly reveal that no sum of money was given or to be given in exchange for the transfer. Based upon this evidence the trial court was not clearly wrong in concluding that the document could not qualify as a sale under Louisiana law. There was no serious consideration. Dixon v. Turner, 364 So.2d 146 (La.App. 1st Cir.1979).
However, Louisiana jurisprudence expressly recognizes that an instrument which purports to be a sale, but fails to satisfy the legal requirements as such may nevertheless qualify as a donation inter vivos if the required formalities are met. Succession of Daste, 254 La. 403, 223 So.2d 848 (1969).
Appellant urges us to construe the instrument as a valid donation. The alleged donor (Mrs. Stevens) arguably obligated herself to the benefit of the alleged donee (Mr. Stevens) without obtaining anything in return. Therefore, it might appear that this was a gratituous transfer of property under LSA-C.C. art. 1910. As such, the only way a successful transfer could be made during the life of the alleged transferor is via an inter vivos donation. LSA-C.C. art. 1467. However, the trial court concluded that the purported transfer must fail even as a gratituous inter vivos donation for lack of the required formalities.
In order to have a valid inter vivos donation, the donor must divest himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. LSA-C.C. art. 1468.
Therefore, it must be determined whether the alleged donor, Mrs. Stevens, presently and irrevocably divested herself of the thing given. She did execute an authentic act when she signed the cash sale deed which was witnessed by two people and notarized. Ordinarily, execution of an authentic act can provide an inference of donative intent. Brewster v. Brewster, 259 So.2d 388 (La.App. 2d Cir.1972). However, this inference is rebuttable by contrary admissible evidence.
The parol evidence in the instant case clearly indicates that Mrs. Stevens did not intend to irrevocably donate the retirement pay to her husband. Mrs. Stevens[3] testified in deposition that she did not really think she was donating the property. On the contrary, she stated she believed the document would have absolutely no legal effect in light of her attorney's representations. She testified that she only signed the document to keep her husband from worrying her about it. Thus, the trial court did not err in finding the evidence negated intent.
Moreover, a legally binding inter vivos donation must be accepted by the donee in precise terms. LSA-C.C. arts. 1540, 1541. These code articles require that the acceptance, like the donation, be in authentic form. A tacit acceptance is not enough. Rutherford v. Rutherford, 346 So.2d 669 (La.1977). In the instant case, the cash sale deed was signed only by the donor and there is no evidence that the attempted donation was formally accepted by the donee as required under the code.
In conclusion, the trial court considered the foregoing evidence and found that the alleged donee, Mr. Stevens, had failed to prove the formalities of an inter vivos donation. Based upon the evidence presented we do not find that the trial court was clearly wrong in this finding.

*890 ISSUE # 4APPELLANT'S RECONVENTIONAL DEMAND
In his reconventional demand, Mr. Stevens seeks the return of $8,670 paid to Mrs. Stevens under the terms of the settlement agreement. He contends that if the agreement is void for either mistake of law or lesion, then it should be rescinded. If it is rescinded then he is entitled to have monies paid under the invalid agreement returned to him.
Since we have concluded that McCarty is not to be retroactively applied to rescind the settlement agreement, we likewise conclude that appellant has no right of reimbursement under the enforceable agreement.
Accordingly, for the reasons expressed, the judgment of the trial court is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] Tarver v. Tarver, 441 So.2d 451 (La.App. 2d Cir.1983) and Erspan v. Badgett, 659 F.2d 26 (5th Cir.1981).
[2] The lower court ruled parol evidence was admissible as to the issue of consideration and intent of the parties concerning this document. No error is assigned to this ruling by either party to this appeal.
[3] At the time the deposition was given she was Ms. Guastella.